[No. 20628.   In Bank. — September 1, 1890.]

## THE PEOPLE, RESPONDENT, v. GEORGE NELSON, APPELLANT.

CRIMINAL LAW — ROBBERY — EVIDENCE — PRELIMINARY QUESTION. — Upon the trial of a defendant charged with robbery, where it appears that two men were robbed while riding together in a buggy, it is proper for the prosecution to ask one of the men, who had stated in his evidence when and where he met the other, to "state whether you and he took any journey on that day," as the question is merely preliminary to the further examination.

ID. — ROBBERY OF ANOTHER PERSON — RES GESTÆ. — Where a defendant is charged with the robbery of one man only, who was robbed while riding with another person, who was also robbed, evidence of the prosecuting witness, whom the defendant was accused of robbing, after stating how he was made to give up his watch and money, that the robber turned his attention then to the person riding with him, and pointed his gun at him, and that the gun was a pistol, is admissible as part of the *res gestæ;* and an objection that the evidence tended to show the commission of another distinct offense is properly overruled, as the robbery of both persons was practically one act.

ID. — TELEPHONING SHERIFF — INSTRUCTIONS TO THIRD PERSON — RULINGS WITHOUT PREJUDICE. — After such prosecuting witness had stated that he procured a third person to telephone to the sheriff after the robbery, questions not answered as to whether he told him what occurred before telephoning, and whether he told him who to look for, could not prejudice the defendant; and the admission of evidence that he told such third

person to telephone to the sheriff that he was robbed, stating where, and for him to come out, is not prejudicial.

Id. — Hearsay — Motion to Strike out. — An objection to testimony as hearsay and incompetent cannot be taken for the first time by a motion to strike it out.

Id. — Deposition at Preliminary Examination — Absence of Witness from State. — The deposition of a witness, taken at the preliminary examination, in the presence of the defendant, who is shown by the oath of the district attorney to have intended to leave the state, and who is absent from the state to the best of the knowledge and belief of the district attorney, and whose appearance could not, with diligence, be produced at the trial, may be read in evidence.

Id. — General Objection to Evidence. — A general objection to the admission of evidence is insufficient; but a party objecting to evidence must specify the ground of his objection, and if he does not, there is no error in overruling his objection, and an exception taken to the ruling is not revisable on appeal.

Id. — Striking out Evidence — Preliminary Examination. — Testimony taken at the preliminary examination of the defendant will not be stricken out at the trial upon motion of the defendant, where no grounds for the motion were stated, and no objection to the testimony was taken at the preliminary examination, or at the trial.

Id. — Admission of Evidence — Error without Injury. — Error in admitting evidence which the record shows could not have been prejudicial to the defendant is not cause for a reversal of the judgment against him.

Id. — Sufficiency of Evidence to Sustain Verdict — Province of Jury. — Where there is direct and positive testimony that the offense charged was committed, and that the defendant was the party who committed it, and there is also circumstantial evidence tending strongly to the same end, the question of the defendant's guilt is for the jury, and a verdict against him will not be disturbed on the ground that it was not justified by the evidence.

Id. — Modification of Instruction — Circumstantial Evidence — Moral Certainty. — It is not error for the court to give an instruction, asked by the defendant, in regard to circumstantial evidence, which stated that "the evidence must be such as to exclude the probability of any other hypothesis being true, and if the evidence does not establish this to absolute moral certainty, then the jury must acquit," when amended by the court by striking out the word "absolute."

Id. — Concurrence of Circumstances. — An instruction, asked by defendant, that, "in order to convict the defendant of a crime upon circumstantial evidence alone, the circumstances proved must all concur to show that he committed the crime, and must all be inconsistent with any other rational conclusion, and must exclude, to a moral certainty, every other hypothesis but the single one of guilt," and amended by striking out the word "all," and given to the jury as amended, states the law correctly.

Id. — Alibi — Reasonable Doubt — Modification of Instruction. — An instruction, asked by defendant, which states that "the commission of a

crime implies the presence of the defendant at the necessary time and place, and evidence of the absence of defendant is always a defense, and if a reasonable doubt is created by this evidence it is the duty of the jury to acquit the defendant," and amended by the court by inserting after the word " always " the words " admitted to establish," as amended, states the law correctly, and is properly given.

ID. — REFUSAL OF INSTRUCTION — IDENTITY OF ACCUSED. — The refusal of the court to give an instruction to the jury, which stated that " the identity of the accused must be established to an absolute moral certainty, and every fact and circumstance must be established to the same degree of certainty as the main fact, which these independent circumstances, taken together, tend to establish. If this certainty is not proven, then the jury must acquit the defendant," — is not error.

ID. — NEW TRIAL — NEWLY DISCOVERED EVIDENCE — DISTINCT ROBBERY. — A refusal to grant a new trial on the ground of newly discovered evidence is not error where no reason is shown why the evidence was not produced at the trial, and the evidence simply tells how another robbery was attempted by some unknown person, near the same place and under similar circumstances, about twenty days after the offense charged was committed.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial.

The facts are stated in the opinion.

*W. A. Anderson,* and *J. C. Tubbs,* for Appellant.

*Attorney-General Johnson,* for Respondent.

BELCHER, C. C. — The defendant was convicted of the crime of robbery, and he appeals from the judgment, and an order denying him a new trial. Numerous errors in the admission of evidence and in the refusal to give certain instructions, as asked by defendant, are assigned; and in order to make clear the points presented, a brief statement of the facts should be made. The offense charged was committed by stopping one Thomas Davis on the highway, and taking from him his watch and chain and a small amount of money. Davis was the foreman of a ranch situated on the north side of the American River, in Sacramento County, and on the third

day of July, 1889, was in the city of Sacramento to obtain supplies for the ranch. He met there one John Cownie, who had recently come to this state from Iowa, and took him into his buggy, and then drove across the river towards the ranch. Shortly after passing the river, and at about two o'clock in the afternoon, or a little later, he was stopped on the road by a man who came out of the brush, and presenting a revolver, told him to halt, and to strip his pockets, and throw out his watch, quick. Davis threw his watch and money on the ground, and the robber then turned his pistol on Cownie, and told him to deliver up his money. Cownie threw out his purse, and was then told to give up his watch, and be quick about it, or he would shoot, and Cownie threw down his watch and chain. The robber then told Davis to go on, and he drove rapidly to the ranch, about three miles away. On arriving there, he had one Phil Johnson telephone to the sheriff in Sacramento that he had been robbed across the American River, and to come out. The sheriff telephoned back to Davis to meet him, and Davis, Johnson, and Cownie at once went back and met the sheriff and two deputies near the place of the robbery. Davis then told the sheriff who he thought had robbed him, and the officer went to a milk ranch not far away, and there found and arrested the defendant. At the trial, Davis was called as a witness for the prosecution, and after telling where and when he met Cownie, he was asked: "State whether you and he took any journey on that day." Counsel for defendant objected to the question as irrelevant, immaterial, and incompetent, and the objection was overruled.

This ruling is assigned as error, but we think it proper. The question was merely preliminary to the further examination. The same witness, after stating how he was made to give up his watch and money, was asked: "What occurred after you had given all the property that you had?" The answer was: "Well, he

turned his attention then to Mr. Cownie, and he pointed his gun at him.

Q. "What kind of a gun was it?"

A. "It was a pistol."

This testimony was objected to on the ground that it was irrelevant and incompetent, because it tended to show the commission of another distinct offense. The objection was overruled, and an exception reserved. We see no error in this ruling. The robbery of both parties was practically one act, and the testimony was admissible as part of the *res gestæ*. Further along, after the witness had stated that he had Phil Johnson telephoné to the sheriff, he was asked the following questions: "Did you tell him what occurred before you telephoned?"—"What did you tell him to telephone?"—"Did you tell him who to look for?" Each of these questions was objected to as irrelevant and immaterial, and the objections were overruled. It is claimed that these rulings were erroneous, but, as shown by the record, no answers were given to the first and third questions, and the answer to the second was only: "I told him to telephone to the sheriff that I was robbed."

Q. "What else,— anything?"

A. "And across the American River, and for him to come out."

We are unable to see that the defendant was in any way prejudiced by the rulings. The witness was also asked:—

Q. "Did n't you know the man then that had robbed you?"

A. "Yes, I had recognized him. Yes, sir."

Q. "Did you tell anything to that effect to the sheriff?"

A. "No; and he telephoned back to me to meet him, and me and Phil Johnson and Mr. Cownie turned around after they said they were going out."

The defendant moved to strike out this testimony as irrelevant and incompetent, and hearsay. The motion was denied, and an exception taken. The answer to this

point is, that an objection to testimony cannot be taken for the first time by a motion to strike it out. (*People* v. *Long*, 43 Cal. 444; *People* v. *Rolfe*, 61 Cal. 540.)

At the preliminary examination of the defendant, John Cownie was a witness for the prosecution, and his testimony was correctly taken down by a reporter. At the trial, the district attorney proposed to read this testimony, and counsel for defendant objected to his doing so, on the ground that it was incompetent, no reason having been given why the witness himself was not present. The district attorney was then sworn, and testified: " Mr. Cownïe informed me that it was his intention to leave the state in about two weeks. If he didn't leave he would notify me as to his whereabouts. I received no notification from him, and it is my best belief that he has returned to Iowa."

*The Court.* "When this testimony was taken, where did the witness go?— or did he state where he was going?"

A. "He said he did not know where he would go. He said it was probable he might go up the Sacramento road, and from there go on to Oregon. He said he might go to San Francisco, and he hadn't yet made up his mind. He might take the steamer back, or he might go back by the southern road, but he hadn't made up his mind, but it was his intention not to stay in the state more than ten days or two weeks. I said: ' The case might be set for trial at any time, and your presence desired, if you are in the state.' He said: ' If I remain here more than two weeks, I will let you have notice of my whereabouts.' I have no knowledge of where the man is to-day, unless he is at home, at Des Moines, Iowa. I could not issue a subpœna, because I had no idea where to send it, and could have no idea. I will further state that Mr. Cownie told me it was his intention not to return to the state of California."

The objection was then overruled, and an exception

reserved. The Penal Code, section 686, provides that in a criminal action the defendant is entitled " to be confronted with the witnesses against him, in the presence of the court, except that where the charge has been preliminarily examined before a committing magistrate, and the testimony taken down by question and answer in the presence of the defendant, who has, either in person or by counsel, cross-examined, or had an opportunity to cross-examine, the witness, .... the deposition of such witness may be read, upon its being satisfactorily shown to the court that he is dead or insane, or cannot, with due diligence, be found within the state."

It is claimed that this ruling was erroneous, because it did not appear that any effort had been made to ascertain whether the witness was still in this state, or had returned to his home in Iowa; but we think the sworn statements of the district attorney, in the absence of anything to the contrary, were sufficient to justify the court in concluding that the witness had left the state, and could not by any diligence have been produced at the trial.

In the testimony of the witness Cownie, the following occurs: —

"Q. I will ask you this: Did he mention to you — did he state as a fact to you, any time after that, that he recognized the man?

"A. We had not driven forty rods until Mr. Davis said: 'I know that man. I know that voice. I know who robbed us. Just let me think, —let me think.' I was letting him do as much thinking as he pleased; for I was doing considerable myself, and was not speaking. He said: 'Let me think.' I had not spoken yet. I was thinking, too.

"Q. When did he, if any time, state that he knew who it was.

"A. He spoke before we were at the end of the trestle. He said: 'I know that man.'

"Q.   Where did he fix the man?

" A.   He said he was a painter.   He said: 'I know that voice.   That is the voice of the man that done some painting for us.'   He said: 'He painted this buggy we are riding in.'"

At the conclusion of the testimony of the witness, the following objections, motions, and exceptions are shown by the record: "Counsel for the defendant objected to the question asked in the deposition as to whether Davis recognized the man.   The objection was overruled, and counsel for defendant excepted.   Counsel for the defendant moved to strike out the answer to that question after the answer was made.   Motion denied.   Counsel for the defendant excepted.   Counsel for the defendant moved at the time of reading to strike out the answer, 'I know that man.'   Motion denied.   Defendant excepted.   Counsel for defendant moved to strike out the expression of the witness, ' That is the voice of the man that done some painting for us.   He painted this buggy we are riding in.'   Motion denied.   Defendant excepted."

It is claimed that the conversation between Davis and Cownie was inadmissible, and that the court erred in its rulings, to the prejudice of defendant.   The answer to this point is, that no ground of objection to the first question was stated, and the well-settled rule is, that a general objection to the admission of evidence is insufficient.   "A party objecting to evidence must specify the ground of his objection. (*People* v. *Manning*, 48 Cal. 335.)   If he does not, there is no error in overruling his objection, and an exception taken to the ruling is not revisable on appeal. ( *Winans* v. *Hassey*, 48 Cal. 635.)" (*People* v. *Chee Kee*, 61 Cal. 404.)   And as to the motions to strike out, it does not appear, from the record, that any objection to the testimony was taken at the preliminary examination or at the trial, and in such case, as we have seen, a motion to strike out will not be entertained. Besides, no grounds for the motions were stated.

John Morrison was called as a witness for the prosecution, and testified that he kept a saloon on the north side of the American River, and that the defendant came to his saloon at about twelve o'clock on the 3d of July; that he did not notice how defendant was dressed; and that he testified in the justice's court. He was then asked: "Recall to your memory whether you did n't testify there as to the clothes that he had on." Counsel for defendant "objected to the attorney calling the attention of the witness to that testimony, or to any testimony." The objection was overruled, and an exception taken. The answer was: "I remember testifying. I testified that I did n't know what clothes he had on when he went on, but I noticed the clothes after he was arrested." The witness went on to state that he saw Mr. Davis drive past at a pretty good gait, going north, and that he remembered when he came back. He was then asked: "Did Mr. Davis communicate to you the fact that a robbery had been committed?" This question was objected to as irrelevant and immaterial, and the objection was overruled. The answer was, "Yes, sir." It is claimed that these two rulings were erroneous; but conceding them to be so, we are unable to see that the defendant was or could have been in any way prejudiced by them. They are therefore not cause for a reversal of the judgment.

It is further contended that the verdict of the jury was contrary to the evidence, and that the jurors must have been controlled by prejudice or passion. But there was direct and positive testimony that the offense charged was committed, and that the defendant was the party who committed it. There was also circumstantial evidence tending strongly to the same end. Whether the defendant was guilty or not was therefore a question for the jury, and the verdict cannot be disturbed on the ground that it was not justified by the evidence. It should be added that we see nothing in the record tend-

ing to show that the jury was at all influenced by passion or prejudice.

Counsel for defendant requested the court to give to the jury the following instructions: "When a criminal charge is sought to be proved by circumstantial evidence, the proof must be consistent with defendant's guilt, and inconsistent with every other rational conclusion. Each rational fact going to make up the chain of circumstances must be proved to a moral certainty, and beyond all reasonable doubt. The evidence must be such as to exclude the probability of any other hypothesis being true, and if the evidence does not establish this absolutely to moral certainty, then the jury must acquit." "The identity of the accused must be established to an absolute moral certainty, and every fact and circumstance must be established to the same degree of certainty as the main fact which these independent circumstances, taken together, tend to establish. If this certainty is not proven, then the jury must acquit the defendant." The court struck out the work "absolute" in the first of these instructions, and, as thus amended, gave it to the jury; and it refused to give the second. There was no error in this. In *People* v. *Davis*, 64 Cal. 440, an instruction was asked by the defendant in regard to circumstantial evidence, which stated that "the hypothesis contended for by the prosecution must be established to an absolute moral certainty, to the entire exclusion of any rational probability of any other hypothesis being true, or the jury must find the defendant not guilty." The instruction was refused, and in this court it was said: "A philologist may be able to say that the word 'absolute,' in the instruction requested and rejected, adds no force to the words 'moral certainty.' But the word suggests a degree of certainty greater than that moral certainty which can be reached upon such evidence as is securable in courts of justice. If the learned judge of the court below had stricken out the word 'absolute,' we certainly

could not have held that it was error on his part. It follows that it was not error to decline to give the instruction as it was presented."

The defendant also asked the court to give to the jury instructions reading as follows: "The commission of a crime implies the presence of the defendant at the necessary time and place, and evidence of the absence of defendant is always a defense; and if a reasonable doubt is created by this evidence, it is the duty of the jury to acquit the defendant." "In order to convict the defendant of a crime upon circumstantial evidence alone, the circumstances proved must all concur to show that he committed the crime, and must all be inconsistent with any other rational conclusion, and must exclude, to a moral certainty, every other hypothesis but the single one of guilt." The court amended the first of these instructions by inserting after the word "always" the words "admitted to establish," and the second by striking out the word "all." As thus amended both instructions were given. We think the instructions as given stated the law correctly, and that the amendments complained of were therefore properly made.

The last point made is that a new trial should have been granted on the ground of newly discovered evidence. A sufficient answer to this is,— 1. That no reason is shown why the evidence was not produced at the trial; and 2. That it simply tells how another robbery was attempted by some unknown person, near the same place, and under similar circumstances, about twenty days after the offense here charged was committed.

We advise that the judgment and orders be affirmed.

FOOTE, C., and GIBSON, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and orders are affirmed.