[Crim. No. 3066. Third Dist. Oct. 4, 1960.]

THE PEOPLE, Respondent, v. THOMAS VACCA, Appellant.

David Glickman, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and John Foran, Deputy Attorneys General, for Respondent.

VAN DYKE, P. J.—Appellant was charged with and convicted of burglary in the first degree. His motion for a new trial was denied and he appeals from the judgment and from the order denying him a new trial.

Since appellant does not challenge the sufficiency of the evidence to support the verdict against him, we will state the facts briefly. In the early morning of September 1, 1959, appellant was seen drinking in a bar in Woodland, close to the Hotel Aggie. About 1:30 a.m. he was observed walking along the street, looking in the shop windows. The officer who observed him questioned him as to what he was doing and was told that he was in the process of taking a bus to Sacramento. About 2:30 a.m., the same officer saw him again and questioned him further. The same officer saw him a third time at nearly 3 a.m. He was then near the bus stop. He had a brown paper bag in his arms. One Hassan Mohammedi was a tenant in the Aggie Hotel. He left his room about 4 p.m. on the afternoon of August 31st and when he returned about 3 a.m. he found his key missing from a rack in the hotel lobby where it was kept during his absence. On going to his room he found the door unlocked and various items of personal property were missing. He called the police. About 3:25 a.m. the same officer who had seen and questioned appellant responded to the call and on his way observed a man about 75 yards from

the hotel and near the railroad tracks, who fitted the description of appellant, as the officer had theretofore observed him. This person was peeking around from behind a flatbed railroad car, watching the officer. Upon learning of the theft the officer returned to the spot where he had observed the man near the railroad car and as he approached that spot the man, who was still there, started walking away at a fast pace. The officer then recognized him as the same man whom he had seen previously. He stopped him. He then observed a brown paper bag on the flat car at the point where he had originally seen the appellant standing, and on looking inside the bag, discovered articles taken from Mohammedi's room. He asked appellant where he got them and the reply was, "I don't know." The officer took appellant and the personal property back to the hotel and interviewed Mohammedi. During the conversation it was asserted in the presence of appellant that the officer had caught appellant "with the goods," to which assertion appellant made no response. Mohammedi positively identified the articles as those which had been taken from his room.

■ Respondent contends that the court erred in permitting the introduction into evidence of a conversation between the prosecuting attorney and the appellant which was held on the day after appellant's arrest. The statement was as follows: "I asked the—I stated to the defendant that he was under arrest relative to a burglary that took place at the Aggie Hotel the night before, and asked him if he did it, and he said he didn't want to talk about it. I asked him if he would admit doing this burglary, and he said no, he wouldn't admit it; and I asked him if he would deny carrying off this burglary, and he said no, he would not deny it. And I asked him if he wanted to talk, and he said, 'No. The last time I talked they sent me to State Prison.' . . . And then I asked him if he wished to talk any further about it, and he said no, he would rather talk to a lawyer before he discussed that incident any further. And that was the extent of the conversation with the defendant at that time."

The admissibility of the defendant's responses to accusatory statements, as well as the manner in which admissibility is to be determined, are well described in *People* v. *Davis,* 43 Cal.2d 661, 670, et seq. [276 P.2d 801], and in *People* v. *Simmons,* 28 Cal.2d 699, 712, et seq. [172 P.2d 18]. While the procedure suggested therein was not followed in the instant case, the reason appears to be found in the lack of objection to the introduction of the statement when it was proffered. The rec-

ord shows the following: At the close of the People's case in chief, the prosecuting attorney had himself sworn as a witness. Defense counsel stated to the court that if the prosecuting attorney was going to be a witness he should be declared ineligible to address the jury on the subject matter of his own testimony, and the court so ruled. This ruling was accepted by the prosecuting attorney and he then proceeded to state he had taken a short statement from the defendant in the sheriff's office in the presence of another officer and of a court reporter. At that point objection was made that his oral recital of the conversation would not be the best evidence. This objection was overruled. The witness then proceeded without further comment or objection to state the substance of the conversation as hereinabove quoted and when he arrived at the point where he repeated the defendant's statement that "The last time I talked they sent me to State Prison," counsel for defendant objected that those remarks were improper; that counsel had no right to take the stand and bring up the past history of the defendant; that he considered it a proper ground for declaration of mistrial (he did not ask that a mistrial be declared), and he closed by asserting that it was improper for the prosecuting attorney to bring the matter of defendant's prior conviction to the attention of the jury. These objections were overruled and the witness completed the statement as quoted.

Appellant argues that the court erred in admitting the conversation, contending that there was nothing therein to indicate guilt and that on the contrary all that happened was a refusal of the defendant to discuss the matter in reliance upon his constitutional right to remain silent when questioned by officers after arrest. We find ourselves unable to properly discuss these contentions in view of the lack of objections made at the trial. The only objection made was to that part of the conversation which contained the reference to a prior conviction and that was made after the reported conversation reached the point where the defendant's statement concerning his prior imprisonment was in. No motion was made to strike. No objection had been made that the proper foundation for the introduction of admissions had not been laid. No instruction was requested that the court instruct the jury relative to inferences that might be drawn from the conversation. On this record we are unable to say that the admission of the conversation between the prosecuting attorney and the defendant was error.

Appellant further contends that the court erred in permitting the prosecuting attorney to argue the effect of his own evidence. He refers to the following statement made by the prosecuting attorney during argument: ''The defendant or anyone caught with stolen property is bound to explain to us how he came by this property. If he came by it honestly then he should be in a position to tell us how he came by it. Mr. Vacca is not in such a position.'' Appellant took the stand in his own defense and offered to the jury an explanation of his connection with the stolen goods. He asserted that a man had appeared before him offering to sell the articles and that he refused to buy, whereupon the man departed. Appellant argues that he had thus explained his connection with the stolen goods and therefore the above quoted portion of the prosecuting attorney's argument must be interpreted as referring to the fact that when accused of the crime appellant refused to either admit or deny his connection therewith, refused to discuss the matter at all. Once again, however, even if we assume that it was misconduct for the prosecuting attorney to discuss the effect of his own testimony, and that he was so doing when he uttered the words quoted above, we are restrained from considering the asserted misconduct for want of any objection made at the time.

''It is a general rule that any misconduct on the part of the participants in a trial, from which it may rightfully be deduced that the jury was influenced in rendering its verdict, constitutes prejudicial error. Such error, however, cannot be taken advantage of on appeal by the injured party unless an assignment thereof is made at the time of the misconduct or at some time thereafter before the close of the trial. And, unless the harmful result of the misconduct is such that it could not be obviated by an appropriate instruction, there must be, in addition to an assignment of error, a request to instruct the jury to disregard the conduct complained of.'' (3 Cal.Jur.2d, Appeal and Error, § 162, pp. 646-647.)

It is proper to say, however, that when the quoted remarks of the prosecuting attorney are read in context it becomes extremely doubtful that he thereby intended to or did make any reference to his own testimony. Certainly, there was no express reference thereto. The prosecutor had been discussing the explanation given by defendant and, concluding that part of his argument, had said, ''The story just doesn't hold any water, ladies and gentlemen, and you've got

to consider that when you weigh it.'' He then went on to say: ''Now, the court will, of course, read to you the law on the subject. He will inform you that mere possession of this stolen property alone, as he describes possession to you, would not be enough to convict the defendant, but you can corroborate that and must with other evidence, the behavior of the defendant, statements by the defendant, all the facts surrounding the situation. You have the defendant with his brown paper bag just like the one the material was in, he has it on the street, then he only has the one bag later on by the railroad car. And you have this highly improbable story, and you may in your province as jurors by the very improbability of the story dismiss it or disregard it. The defendant or anyone caught with stolen property is bound to explain to us how he came by this property. If he came by it honestly then he should be in a position to tell us how he came by it. Mr. Vacca is not in such a position.'' It is very doubtful whether the jury interpreted what was said as an argument based upon the prosecuting attorney's own testimony in the case.

 Appellant next charges the trial judge with prejudicial misconduct. It appears that after the case was submitted the jury was returned to the courtroom and the following took place: ''A Juror: We would like to know what happened to the clock that was stolen and—the clock and the light meter and the cigarettes. The Court: Well, the court can't tell you because the court doesn't know. The court doesn't hold the preliminary hearing. All that I can say to you is they weren't offered in evidence here and they weren't admitted. As to the reasons why they weren't, the court doesn't know. You will just have to go by the evidence that's before you. Some things, you know, you can't identify. A pack of cigarettes is a pack of cigarettes, an alarm clock is an alarm clock. As to the other gadget, I don't think I have ever seen one. I don't know what they are talking about. I can't tell you. If you can't identify them you can't identify them in evidence, I know that, don't you?'' It appears that the articles claimed to have been stolen had not been put in evidence as exhibits. Appellant argues that by what the judge said he prevented or hindered the drawing by the jury of an inference that the reason the prosecution had not placed the stolen articles in evidence was because they had, in fact, not all been found in the possession of appellant, thus making it highly probable that the appellant was not the burglar and that his explanation was true, inasmuch as it had not been shown he had had any opportunity

to dispose of a part of the goods taken. Appellant says: "This point is crucial." The point, however, was not argued to the jury which indicates that defense counsel at the trial did not consider the point crucial at all. There was no misconduct here. Once again, the record discloses that no objection was made at the time.

Appellant also assigns as misconduct a statement by the court during the period when the jurors had returned as above stated, which statement was as follows: "No, I can't argue with the jury, all I can do is tell you what the law is. He doesn't have to have it on his person. If it is in his presence that can be considered possession." This, argues appellant, was a clear misstatement of the law in a case where proof of possession was being relied upon by the prosecution as proof of guilt. The statement assigned as misconduct, and as a misstatement of the law is taken out of context. A juror had asked this question: "Your Honor, what weight should the jury give to possession of stolen property in determining the crime of burglary? The Court: Well, I will just have to read you those instructions, Mr. Cooper . . . ." The court then read instructions previously given to the effect that mere possession of stolen property, however soon after the taking, unexplained by the person having possession was not sufficient to justify conviction, but was a circumstance to be considered in connection with other evidence in determining the question of guilt or innocence. The court had further stated that in addition to proof of possession there must be proof of corroborating circumstances tending of themselves to establish guilt, and that such corroboration must consist of circumstances, such as acts, conduct, falsehoods, etc., and that one found in the possession of property stolen was bound to explain such possession in order to remove the effect of that fact as a circumstance to be considered with all the other evidence pointing to his guilt. Having reread these instructions, the court continued with the statement assigned as misconduct and as a misstatement of the law. The court then said further: "If he had dominion and control over it or immediate access to it and his explanation as to why it was there and why he was so close to it, the jury has the right to consider the truthfulness of the defendant's statements in regard to why he was in the immediate proximity of that stolen goods, if it was stolen." We think there was neither misconduct nor misstatement of

the law when the remarks assigned as such are taken in context.

■■■ Finally, appellant contends that the court erred in permitting the prosecutor to read into evidence the transcripts of testimony given by Mohammedi at the preliminary hearing. In this instance proper objections had been made to the reading of the deposition of Mohammedi, the owner of the goods alleged to have been stolen. Proof had been made that the witness was out of the jurisdiction and had been for some time, in fact from a time prior to the setting of the case for trial. He had returned to his native country in Africa. Penal Code, section 686, paragraph 3, provides:

"In a criminal action the defendant is entitled:

". . . . . . . . . . . .

"3. To produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except that where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, who has either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness . . . the deposition of such witness may be read, upon its being satisfactorily shown to the court that he . . . can not with due diligence be found within the state; . . . ."

Appellant argues that due diligence was not shown and relies upon the following admitted facts. The crime was committed sometime between 4 p. m. on August 31, 1959, and 3 a. m. on September 1, 1959. Appellant was arrested during the early morning hours of September 1st. A preliminary hearing before a magistrate was held September 3d, and appellant was committed to the Superior Court for further proceedings. Almost immediately the prosecution was informed that Mohammedi would leave California within a short period and proceed to his home in the Sudan. In spite of this knowledge, the prosecution neither required security for his presence at the trial, nor took his deposition conditionally before he left. He left before a date of trial had been set. Since that time he had not been present in this country. Appellant argues that having neither secured the presence of Mohammedi for the trial, nor having conditionally taken his testimony before his departure, due diligence to present him at the trial to confront the defendant thereat was not shown. His objections based on these grounds were overruled

and Mohammedi's testimony at the preliminary examination was admitted in evidence. Defendant was attended at the preliminary examination by his counsel who tried the case in the Superior Court, and Mohammedi was cross-examined to a considerable extent at the preliminary. In view of the cases which have held that under similar circumstances the trial court did not abuse its discretion in permitting the receipt in evidence of the testimony at the preliminary examination, we have come to the conclusion that appellant's contentions cannot be sustained in this case. In *People* v. *Nelson,* 85 Cal. 421, 428 [24 P. 1006], a witness testified at the preliminary hearing, identifying the defendant as the man who had robbed him and his companion, and it was this testimony that the district attorney proposed to read at the ensuing trial. Foundationally, the district attorney testified that he had been informed at or shortly after the preliminary, that the witness intended to leave and return to Iowa; that the witness did not then know just where he would go or how he would proceed, but said that if he was in the state when the trial occurred he would attend. The district attorney testified that he had no knowledge of where the man was unless he was at his home in Des Moines, Iowa. The Supreme Court said that the evidence was properly admitted and that the statements of the district attorney, in the absence of anything to the contrary, were sufficient to justify the court in concluding that the witness had left the state and could not, by any diligence, have been produced at the trial. In *People* v. *Horace,* 127 Cal.App.2d 366 [273 P.2d 923], after the preliminary hearing, a witness had told an officer that he intended to leave California to be gone for some time, and that he could be found either in Dallas, Texas, or Minneapolis, Minnesota. It was satisfactorily established that he was not in California at the time of the trial. The court said, at pages 369, 370:

"The question as to what will constitute due diligence to secure the presence of a witness which will authorize the reading of such witness' testimony taken at the preliminary hearing when such witness is shown to be unavailable, is largely within the discretion of the trial court and depends on the facts of each particular case. [Citing cases.]

". . . . . . . . . .

"There appears to have been no abuse of discretion in the present case in permitting the reading into the record of the testimony of Mr. Friedland at the preliminary hearing as his

presence outside the jurisdiction was satisfactorily established.''

We think it is unnecessary to specifically refer to a number of other cases appearing in the reports, where, under similar situations, such testimony was admitted and the ruling held to have been within the discretion of the trial court. It is our conclusion that diligence was shown.

The judgment and the order appealed from are affirmed.

Schottky, J., and Warne, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 30, 1960.

*Assigned by Chairman of Judicial Council.