MILLER ELECTRIC CONSTRUCTION,
INC., Plaintiff,

v.

DEVINE LIGHTING COMPANY,
INC., Defendant.

Civ. A. No. 76–580.

United States District Court,
W. D. Pennsylvania.

Nov. 1, 1976.

Maurice A. Nernberg, Nernberg & Nernberg, Pittsburgh, Pa., for plaintiff.

Arthur H. Stroyd, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

SNYDER, District Judge.

Disciplinary Rules 5–101 and 5–102 of the Code of Professional Responsibility[1] require a lawyer to refuse employment or, if he has already accepted employment, to withdraw from the conduct of a trial when it is known or obvious that he or a member of his firm ought to testify for his client. This Court is here confronted with Defendant's Motion for Disqualification of Plaintiff's Counsel on the alleged basis that such counsel will be required to testify.[2] Premature action by the Court could erroneously deprive a party of his choice of counsel. On the other hand, delay by the Court could result in considerable prejudice to both parties.[3]

The Defendant contends that it is obvious from the face of the complaint that Mr. Nernberg, Miller Electric's counsel, ought to testify for his client. Miller Electric claims damages in this action for breach of

---

1. Disciplinary Rules 5–101 and 5–102 provide in pertinent part as follows:

   "DR 5–101 Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

   \*　\*　\*　\*　\*　\*

   (B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

   (1) If the testimony will relate solely to an uncontested matter.

   (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

   (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

   (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

   "DR 5–102 Withdrawal as Counsel When the Lawyer Becomes a Witness.

   (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

   (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

2. It is important to note at the outset that the Court is not here involved in a disciplinary proceeding against an attorney for violation of the Disciplinary Rules of the Code of Professional Responsibility. Our only concern at this point is the disqualification of a counsel, pursuant to the Court's power and duty to supervise attorneys, in order to protect the adversaries before the Court. The matter is clearly one of discretion for the Court. *See In re Gopman,* 531 F.2d 262 (5th Cir.1976); *Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir.1975); *Richardson v. Hamilton International Corp.,* 469 F.2d 1382 (3d Cir.1975); *Tucker v. Shaw,* 378 F.2d 304 (2d Cir.1967). The Court may exercise this discretion not only when the Court perceives a violation of the Disciplinary Rules, but also to "nip in the bud" potential violations before the parties have been injured. *In re Gopman, supra,* at 266; *Tucker v. Shaw, supra,* at 307.

3. The problems that arise when an attorney attempts to act both as counsel and witness are identified in EC 5–9. It states that the lawyer

   "becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."

contract by Devine Lighting.[4] This contract was negotiated in part between Richard Miller as President of Miller Electric and Irv Kotovsky, a Pittsburgh Representative of Devine Lighting. Further arrangements were then made by both oral and written communications between Mr. Nernberg and Joseph Straus, another Devine Lighting Representative. Specifically, Miller Electric averred that a "contract" was prepared "in accordance with the telephone conversation by Maurice A. Nernberg, Jr. as attorney for [Miller Electric] and Mr. Joseph Straus as representative of Devine Lighting." (Complaint, at 4, ¶ 17). This "prepared contract" was sent to Devine Lighting in the form of a letter, a copy of which was included in the Complaint as Exhibit A, which was written on Mr. Nernberg's legal stationery and stated:

"Dear Mr. Strauss:

This letter is being forwarded to you pursuant to conversations between this office, as counsel for Miller Electric Construction Company, and your local manufacturer's representative.

It is our understanding that you have agreed to submit a sample of the fixture outlined in the aforementioned drawing for approval by the engineers on behalf of the owner, Allegheny County Hospital Development Authority. This sample is to be received by Miller Electric Construction Company on or before December 19, 1975. Miller Electric Construction Company is to thereafter submit the sample to the engineers for approval. Immediately upon receiving approval, Miller Electric Construction Company does agree, if such approval is received on or before January 15, 1976, to issue a firm

order to your company to supply those fixtures required by the shop drawings. You are . . . agreeing and guaranteeing . . . that if you receive a firm order from Miller Electric Construction Company or or before January 15, 1976, that you will have the fixtures completed and delivered to the job site no later than April 1, 1976.

This letter is intended to be an agreement made by Maurice A. Nernberg, Jr. on behalf of Miller Electric Construction Company for it, and you are to sign a copy of this letter agreement and return the same . . . . .

Very truly yours,
NERNBERG & NERNBERG
By: Maurice A. Nernberg, Jr.
Maurice A. Nernberg, Jr. Attorney and on behalf of Miller Electric Construction Company."

In its Answer, the Defendant denied the existence of a contract and did not admit that the letter in question was genuine. The Defendant argues that Mr. Nernberg is therefore involved in a disputed matter of fundamental importance to the case, and that he obviously ought to testify about the contract negotiations, about the conversations with Mr. Straus and the agreement to submit a sample indicated in the letter, and about the genuineness and meaning of the letter.

At this point in the proceedings, even before any discovery has been conducted, the Court is not able to determine, although it seems most likely, that Plaintiff's counsel might be required to testify in the interest of his client and that later withdrawal could cause prejudice to the Defendant.

The Complaint further alleges that Devine Lighting then agreed to provide a sample fixture conforming to the drawings and to provide the quantity of fixtures upon acceptance by the Hospital Authority. However, the sample submitted was rejected by the Hospital Authority as not conforming to the drawings. Consequently, Miller Electric claims that they were forced to purchase other fixtures at greater expense.

4. Miller Electric averred that it obtained a low bid price from Devine Lighting for the supply of certain outdoor lighting fixtures to be used by Miller Electric in a contract with the Allegheny County Hospital Development Authority. As required in its contract with the Hospital Authority, Miller Electric then requested shop drawings of Devine Lighting's fixtures and submitted them to a Hospital Authority Engineer for review and approval. The engineer said he would approve the fixtures if they conformed with the shop drawings.

■ The Disciplinary Rules provide that if the counsel's withdrawal "would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel", he need not withdraw. DR 5–101(B)(4) and DR 5–102(A). Likewise, a Court would also consider the hardship caused the client before disqualifying an attorney. The Defendant's concern is that, by continued development of the case for any length of time, Mr. Nernberg's services may become so distinctive that this Court would not disqualify him because of the hardship that would be caused the Plaintiff.. Mr. Nernberg could then be permitted both to remain on the case and to testify, to the detriment of Defendant's ability to impeach and cross-examine him as a witness. The Defendant therefore urges the Court to resolve any doubt now in favor of Plaintiff's counsel testifying over his continued service as trial counsel.[5]

■ The Court has carefully considered the Defendant's contentions and agrees that when delay by the Court would unavoidably prejudice a party, it may have to disqualify a counsel even when it cannot determine with certainty whether that counsel ought to testify. By resolving its doubt in favor of the attorney testifying, the client will still have the opportunity to obtain effective trial counsel as well as receive the full benefit of the original attorney's testimony in his behalf. And the opposing party is afforded his full and unimpaired rights to cross-examine and impeach the attorney's testimony. But the Court also believes that when additional information may remove the doubt and waiting to acquire that information will not prejudice

either party, the Court should not act prematurely.

■ Here, although the Complaint clearly suggests that Mr. Nernberg could offer testimony for his client, there is some question whether he will be required to testify. The testimony of Irv Kotovsky and Joseph Straus may suffice to support the Plaintiff's contentions about the contract negotiations, conversations and letter.[6] *See* DR 5–101(A)(1) & (2) and DR 5–102(A); EC 5–10.

Proper discovery should reveal what the testimony of Irv Kotovsky and Joseph Straus will likely be and may enable the Court to determine with greater certainty whether later action is necessary to protect either party.[7] The nature of the situation encourages counsel for both sides to conduct appropriate discovery on this matter as quickly as possible. The Plaintiff is so encouraged because he knows that the Code of Professional Responsibility and the interests of his client require him to withdraw at the earliest possible time. In addition, Ethical Consideration 5–10 states that when the question arises, the lawyer should resolve any doubts in favor of his testifying and against his continuing as an advocate. Thus, the lawyer has an affirmative duty to determine if he ought to testify and, if doubt persists, to withdraw. The Defendant is also encouraged to act promptly because he wants to avoid unnecessary expenses caused by delays that may ensue if the Plaintiff must obtain new counsel late in the proceedings. In addition, by conducting proper discovery and determining the testimony of its own witnesses without delay, Defendant can alleviate any concern, regardless of how slight that concern may

---

**5.** The Defendant relies on EC 5–10, which calls on attorneys to resolve doubt in favor of their testifying and against their continued service as counsel, for authority that the Court should also resolve doubt in favor of the counsel's testifying. *See also Hull v. Celanese Corp., supra,* at 571, for the proposition that in a disqualification situation, doubts should be resolved in favor of disqualification.

**6.** If it is unlikely that the attorney will be called as a witness because his testimony would be

merely cumulative, or if his testimony will relate solely to an uncontested matter, it is proper for the attorney to remain on the case. DR 5–101(B)(1) and 5–102(A), EC 5–10.

**7.** The Court notes that in *J. P. Foley & Co., Inc. v. Vanderbilt,* 523 F.2d 1357, 1358 (2d Cir. 1975), a case relied upon by the Defendant, the Court disqualified the counsel only after that counsel had been deposed.

be in light of this Opinion, that Mr. Nernberg may somehow acquire such a unique status in the case by his continued involvement that the Court will permit him to continue to try the case and to testify.

Postponement for a period sufficient to acquire this information will not subject either party to prejudice. The likelihood that Mr. Nernberg will acquire a unique status in the case by his involvement in discovery to develop this additional information is minimal. The Disciplinary Rules intended to create an exception to the withdrawal requirement only for "exceptional situations" in which withdrawal would be manifestly unfair to the client. *See* EC 5–10. Nor will the Court permit counsel to both conduct the trial of the case and testify for his client in a contested matter unless no other alternative will avoid manifest unfairness to the client.

The Court therefore concludes that Defendant's Motion for Disqualification of Plaintiff's Counsel is premature and it will be denied without prejudice to renew the Motion should further developments so warrant.

An appropriate Order will be entered.