[L.A. No. 30787. Apr. 11, 1978.]

BARRY COMDEN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
DORIS DAY DISTRIBUTING COMPANY et al.,
Real Parties in Interest.

908

## COUNSEL

Loeb & Loeb, Robert A. Holtzman and Peter Niemiec for Petitioners.

Herbert M. Rosenthal and Ronald W. Stovitz as Amici Curiae on behalf of Petitioners.

Cooper, Epstein & Hurewitz, Richard D. Agay and Brian Kaufman for Real Parties in Interest.

## OPINION

**CLARK, J.**—Doris Day Comden and Barry Comden seek mandate to compel respondent court to vacate its order requiring petitioners' attorneys to withdraw from their representation of petitioners in an action for injunctive relief and breach of contract. The question presented is whether respondent court abused its discretion in ordering withdrawal pursuant to California Rules of Professional Conduct, rule 2-111(A)(4) when the court concluded that a member of the attorneys'

firm ought to be called as a witness for plaintiffs at trial of the cause.[1] We conclude the court acted within its discretion in ordering withdrawal.

In February 1976 Doris Day Distributing Company (DDDC), the real party in interest, contracted with petitioners to distribute pet products bearing the name and likeness of Doris Day. Petitioners were represented by Attorney Stanley Chernoff throughout contract negotiations with DDDC.

Disagreement soon developed, petitioners claiming DDDC was not meeting its contractual duties to them. In June 1976 Chernoff associated Marvin Greene, corporate law and securities regulations specialist and partner in the law firm of Loeb and Loeb, to assist in resolving petitioners' disputes with DDDC.

In November 1976 petitioners, through Loeb and Loeb Attorney Robert Holtzman, filed in respondent court a complaint alleging breach of numerous contractual covenants and seeking to enjoin DDDC from continuing to use the name and reputation of Doris Day in soliciting potential investors, distributors or customers.

During the course of litigation petitioners sought a preliminary injunction to enjoin DDDC from using Day's name in its business

---

[1]The California Rules of Professional Conduct, binding on all members of the State Bar (see 3B West's Ann. Bus. & Prof. Code (1974 ed.) foll. § 6076, at p. 365), were approved by this court effective 1 January 1975. (14 Cal.3d, at Rules pp. 1-25.) Rule 2-111 governs withdrawal from employment and rule 2-111(A)(4) provides: "(4) If upon or after undertaking employment, a member of the State Bar knows or should know that he or a lawyer in his firm ought to be called as a witness on behalf of his client in litigation concerning the subject matter of such employment he shall withdraw from the conduct of the trial and his firm [, if any, shall not continue representation in the trial, except that he] may continue the representation and he or a lawyer in his firm may testify in the following circumstances: [¶] (a) If the testimony will relate solely to an uncontested matter; or [¶] (b) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or [¶] (c) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client; or [¶] (d) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

The bracketed language does not appear in the text of the rule as proposed to and adopted by this court. (See Bus. & Prof. Code, § 6076.) The State Bar of California, in its brief as amicus curiae in support of petitioners, claims such language was omitted due to a typographical error which is claimed to have occurred after the rule was drafted by the State Bar and before approval by this court. No challenge is made to such assertion by the State Bar. However, our reading of the rule without the bracketed material is consistent with the text including such material, and we thus deem there to be no issue raised by the omission.

activities. In support of petitioners' application, Greene filed a declaration detailing his meetings with representatives of DDDC as he and Chernoff attempted to resolve matters. Greene stated he had heard Anthony Strammiello, a DDDC investor, say he had received a 50 percent equity interest in the company in return for a $150,000 investment. The contract between petitioners and DDDC explicitly prohibited such transfer of interest in DDDC. In a second declaration another Loeb and Loeb attorney stated in support of the application that DDDC representatives had refused to allow the inspection of corporate books as authorized by the contract.

At the hearing for preliminary injunction DDDC moved for an order disqualifying Loeb and Loeb as petitioners' trial counsel, arguing that members of the firm who had made declarations in support of the application were likely to testify at trial. The court granted DDDC's motion, stating "I cannot see how I can say with any degree of security or in good conscience that Mr. Greene will not be called as a witness."

An examination of the purposes underlying rule 2-111(A)(4) supports the court's ruling. An attorney who attempts to be both advocate and witness impairs his credibility as witness and diminishes his effectiveness as advocate. While the harm recedes when the attorney-witness is not himself trial counsel but only a member of trial counsel's firm, the opportunity still exists for opposing counsel to argue the attorney-witness' stake in the litigation through his law firm influences his objectivity. (See ABA Code of Prof. Responsibility, EC 5-9; Sutton, *The Testifying Advocate* (1963) 41 Tex.L.Rev. 477.)

Significantly, the prohibition seeks to avoid the *appearance* of attorney impropriety. The language of rule 2-111(A)(4) closely parallels that of American Bar Association, Code of Professional Responsibility Disciplinary Rules, rules 5-101(B), (1) through (4) and 5-102(A) and (B). In disqualifying a law firm pursuant to American Bar Association rule 5-102(A) a federal court has cautioned we must be mindful of the possibility that testimony by a member of trial counsel's firm may lead the public to be skeptical of lawyers as witnesses, thereby diminishing the public's respect and confidence toward the profession. "Where doubt may becloud the public's view of the ethics of the legal profession and thus impugn the integrity of the judicial process, it is the responsibility of the court to ensure that the standards of ethics remain high." (*U.S.* ex rel. *Sheldon El. Co.* v. *Blackhawk Htg. & Plmg.* (S.D.N.Y. 1976) 423 F.Supp. 486, 489.)

Petitioners argued before respondent court that the order was premature, suggested that subsequent discovery might eliminate need to call Greene as a witness, and offered voluntary withdrawal by Loeb and Loeb if discovery failed to rule out the usefulness of Greene's testimony. Petitioners thus suggest the likelihood of the need of an attorney's testimony is the essential factor governing withdrawal. This is the main ingredient which the court must consider. However, the rule requires withdrawal when the attorney "knows or should know that he . . . ought" to testify.[2] (Cal. Rules Prof. Conduct, rule 2-111(A)(4), fn. 1, *ante*; *J. P. Foley & Co., Inc.* v. *Vanderbilt* (2d Cir. 1975) 523 F.2d 1357, 1359.) ▮ We deem the rule to require that the court first consider whether the attorney's testimony will be necessary to protect his client's interests and, if it concludes such testimony will likely be necessary, that it order a timely withdrawal consistent with minimizing prejudices which may result from the substitution of counsel. Whether an attorney ought to testify ordinarily is a discretionary determination based on the court's considered evaluation of all pertinent factors including, inter alia, the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established. (See *Miller Elec. Const., Inc.* v. *Devine Lighting Co., Inc.* (W.D.Pa. 1976) 421 F.Supp. 1020, 1021, fn. 2.)

▮ Mandamus will not lie to control discretion of a court or to compel its exercise in a particular manner except in the rare instance when the facts command discretion be exercised in but one way. (*O'Bryan* v. *Superior Court* (1941) 18 Cal.2d 490, 496 [116 P.2d 49, 136 A.L.R. 595]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 79, p. 3856.) ▮ Attorney Greene's declaration was to the effect he had heard statements which, if true, establish a breach of contract by DDDC. While others present at the meeting also reported hearing the statements described by Greene, it cannot be said that under the facts the trial court could *only* have concluded Greene's testimony would not be necessary at trial, particularly when Strammiello denied having made the statement reported by Greene and contradictory declarations were offered by DDDC.

▮ When it is impractical to determine with certainty whether an attorney ought to testify, the trial court ordinarily must make a

---

2"Ought" is defined inter alia as "used to express moral obligation, duty, or necessity . . . or what is correct, advisable, or expedient . . . ." (Webster's Third New Internat. Dict. (1961).)

determination notwithstanding the uncertainty, as delay in making a decision may well prejudice the client. (See *Miller Elec. Const., Inc.* v. *Devine Lighting Co., Inc., supra,* 421 F.Supp. 1020, 1023; ABA Code of Prof. Responsibility, EC 5-10.) Although the court in *Miller* determined that delaying a withdrawal decision would not under the circumstances in that case prejudice any party, the court's contrary conclusion here was clearly within the scope of its discretion, the trial judge stating "delaying the decision creates the issue of hardship."

■ Petitioners urge in the prevailing circumstances, rule 2-111(A)(4) is inapplicable under one or more of the exemptions provided. However, Greene's anticipated testimony does not relate to an uncontested matter (Cal. Rules Prof. Conduct, rule 2-111(A)(4), subd. (a)), nor solely to a matter of formality (*id.,* subd. (b)), nor solely to the nature and value of legal services rendered in the case (*id.,* subd. (c)). His testimony will be challenged by more than one opposing witness, and will tend to establish a breach of contract and a basis for its termination.

Rule 2-111(A)(4) might allow continued representation by Loeb and Loeb if a coerced withdrawal would create substantial hardship for petitioners because of the distinctive value of service by the law firm. (*Id.,* subd. (c).) Petitioners will doubtless be inconvenienced by Loeb and Loeb's withdrawal. However, inconvenience falls short of "substantial hardship . . . because of the *distinctive* value of the . . . firm as counsel." (*Id.,* subd. (d); italics added.) Holtzman, while acknowledging some of his work product can be transferred to new counsel, contends his "impressions and rapport with the people involved" cannot be so transferred. He argues petitioners will be forced to incur large legal fees to secure new counsel, and will lose the securities regulations expertise of Greene.

Greene, however, is not petitioners' trial counsel and they will not lose his expertise. To the contrary, withdrawal of Greene's firm should enhance Greene's usefulness as a witness for petitioners as he will no longer be as vulnerable to impeachment for interest. In addition, the ability to establish client and witness rapport and to "form impressions" after legal research is not unique to Holtzman or to other Loeb and Loeb attorneys. If we were to hold that interview, research, and preliminary discussion on trial strategy are sufficient to cloak a firm with such "distinctive value" that a loss of its service results in substantial hardship within the meaning of the rule, the latter will be consumed by exception.

In a case involving disqualification of an attorney who earlier represented an adverse interest, the court stated: "We realize . . . that Rabin's disqualification may inconvenience plaintiffs, who undoubtedly chose Rabin in the belief that he was the best attorney to prosecute their claims, . . . [D]espite his considerable talents, Rabin is not the only member of the patent bar qualified to capably represent these plaintiffs." (*Emle Industries, Inc.* v. *Patentex, Inc.* (2d Cir. 1973) 478 F.2d 562, 574-575.) Obviously, Loeb and Loeb is not the only firm qualified to capably represent these petitioners, nor have petitioners demonstrated the distinctive value of their attorneys' services over those to be rendered by another firm of good quality.

It would be naive not to recognize that the motion to disqualify opposing counsel is frequently a tactical device to delay litigation. (See *U.S.* ex rel. *Sheldon El. Co.* v. *Blackhawk Htng. & Plmb., supra,* 423 F.Supp. 486.) "[J]udicial scrutiny [is required] to prevent literalism from possibly overcoming substantial justice to the parties." (*J. P. Foley & Co., Inc.* v. *Vanderbilt, supra,* 523 F.2d 1357, 1360, conc. opn. Gurfein, C. J.) ██ However, ultimately the issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility. "The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount . . . . ██ [The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of our judicial process." (*Hull* v. *Celanese Corporation* (2d Cir. 1975) 513 F.2d 568, 572.)[3]

When trial counsel foresees the possibility his continued representation of a client may fall within the prohibition of rule 2-111(A)(4) because he or a member of his firm ought to testify on behalf of such client at trial, he should resolve any doubt in favor of preserving the integrity of his testimony and against his continued participation as trial counsel. (See ABA Code of Prof. Responsibility, EC 5-10.) Failing

---

[3]We deem it appropriate that the court's attention to the applicability of rule 2-111(A)(4), or any other rule of professional conduct, be invited by a party to the proceedings. However, the rule is not intended to personally benefit such other party, or to aid counsel for such other party. The court is charged with taking discretionary action with or without a motion therefor when it is made to appear on considerations affecting an attorney, his client and the public trust, the attorney ought to testify as a witness, and no exception is applicable. Although it is urged the rule should be liberally construed to permit retention of an attorney who has acted in behalf of a client, construction of the rule is necessarily tempered by the express exceptions thereto.

voluntary withdrawal by trial counsel in such situation a trial court is vested with broad discretion to order withdrawal. The court in the instant case acted well within the discretion vested in it by rule 2-111(A)(4) in its present form.[4]

The alternative writ is discharged and the petition is denied.

Mosk, J., Richardson, J., and Newman, J., concurred.

**MANUEL, J.**—I respectfully dissent from the views presented by the majority. My reason for doing so is my belief that the trial court acted arbitrarily in applying a literal application of rule 2-111(A)(4) without balancing the equities involved. In so doing, the trial court appears to have been merely enforcing a rule of professional conduct, a function better left to the State Bar, rather than determining if there existed any real impropriety threatening the integrity of the proceeding before it.

It is commonplace for attorneys to participate in the business-legal affairs of their clients, and this participation should be encouraged as part of the concept of preventive law. The instant case shows this involvement. Greene, a partner in the law firm of Loeb and Loeb and a specialist in their corporate department represented petitioner when the contract in question was first negotiated. His declaration was used in support of petitioner's application for preliminary injunction. For this prior participation, the trial court held that rule 2-111(A)(4) of the State Bar of California Rules of Professional Conduct compelled a withdrawal

---

[4]Application of rule 2-111 is not limited to breaches of standards of conduct for which discipline may be imposed, although the rule manifestly has application for that purpose. (See Bus. & Prof. Code, §§ 6076, 6077.) We have this year held that a trial court has authority to recuse a prosecutor on the basis that he may be biased against a defendant. (*People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164].) We noted in that case: "It has long been established in civil cases that the court has the power, on motion of a party, to disqualify an opposing attorney from participating in a trial when, for example, the attorney improperly seeks to proceed against a former client. [Citations.]" (*Id.*, at pp. 263-264; see also *Wutchumna Water Co.* v. *Bailey* (1932) 216 Cal. 564 [15 P.2d 505]; *Big Bear Mun. Water Dist.* v. *Superior Court* (1969) 269 Cal.App.2d 919 [75 Cal.Rptr. 580].) Although there may be greater reason for disqualifying an attorney in a conflict of interest case, the court nevertheless has authority to disqualify in any instance when, as here, the court reasonably deems it necessary to ". . . control in furtherance of justice, the conduct of its ministerial officers. . . ." (Code Civ. Proc., § 128; see *People* v. *Superior Court, supra,* 19 Cal.3d 255, 261, fn. 4.)

of Loeb and Loeb from the case, the court stating: "I could not see how I could say with any degree of security or in good conscience that Mr. Greene would not be called as a witness."

Rule 2-111(A)(4) does not dictate so mechanical a result.[1] The majority states that the purpose of that requirement is to avoid the appearance of attorney impropriety. However, the avoidance of mere appearance should not be permitted to interfere with the substantial right to counsel of one's choice (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction § 197, p. 728; *Golden State Glass Corp.* v. *Superior Ct.* (1939) 13 Cal.2d 384, 396 [90 P.2d 75]; *Evans* v. *Superior Court* (1939) 14 Cal.2d 563, 581

---

[1]The history of rule 2-111(A)(4), as commented on in *People* v. *Guerrero* (1975) 47 Cal.App.3d 441, 445, 448 [120 Cal.Rptr. 732], is illustrative of its purpose and intent. The court therein stated: "In implementing Canon 5 of its Code of Professional Responsibility ('A lawyer should exercise independent professional judgment on behalf of a client'), the American Bar Association has promulgated this ethical consideration: 'EC 5-9 Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.'

"The applicable disciplinary rules are DR 5-101(B) and DR 5-102(A): 'DR 5-101 Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

" ' . . . . . . . . . . . . . . .

" '(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

" '(1) If the testimony will relate solely to an uncontested matter.

" '(2)· If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

" '(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

" '(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

" 'DR 5-102 Withdrawal as Counsel When the Lawyer Becomes a Witness.

" '(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).'

"Effective January 1, 1975, new rules of professional conduct were adopted by the Board of Governors of the State Bar of California. We note in particular rule 2-111(A)(4):

" '(4) If upon or after undertaking employment, a member of the State Bar knows or should know that he or a lawyer in his firm ought to be called as a witness on behalf of his client in litigation concerning the subject matter of such employment he shall

[96 P.2d 107]; *People* v. *Brady* (1969) 275 Cal.App.2d 984, 992 [80 Cal.Rptr. 418]), where there is no detriment to the opposing party or threat to the integrity and efficiency of the judicial process.

I urge, accordingly, that there was an abuse of discretion in the trial court's action against Loeb and Loeb. First, the record does not contain any inkling of harm or injury to defendants were the firm to continue its representation; indeed, on oral argument before this court, their counsel could show no prejudice beyond a vacuous statement that he might have had to cross-examine a professional colleague. If there was harm in these circumstances, it was to Greene's credibility as a witness, given his participation in the negotiations as the Comdens' attorney. Yet reason suggests that if a party is willing to accept less effective counsel because of the attorney's testifying, neither his opponent nor the trial court should be able to assert this choice against the party without clear evidence of detriment to the opponent or injury to the integrity of the judicial process. (*Harris* v. *Superior Court* (1977) 19 Cal.3d 786 [140 Cal.Rptr. 318, 567 P.2d 750]; cf. *Martin* v. *Alcoholic Bev. etc. Appeals Bd. (Hayes)* (1961) 55 Cal.2d 867, 875-880 [13 Cal.Rptr. 513, 362 P.2d 337]; *People* v. *Brady* (1969) 275 Cal.App.2d 984, 992 [80 Cal.Rptr. 418]; *Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 560-562 [68 Cal.Rptr. 1, 440 P.2d 65]; *People* v. *Loving* (1968) 258 Cal.App.2d 84, 87 [65 Cal.Rptr. 425]; *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274].) Mere recital of the rule should not be enough.

Secondly, if the reason underlying disqualification is primarily opposing counsel's difficulty in cross-examining a colleague, surely this handicap will exist whether Loeb and Loeb remains as the representing law firm or is suspended. If it is true that Mr. Greene ought to testify, then we can assume that at some point he is going to testify. Defendants have shown no more detriment will occur if petitioners are at that point represented by Loeb and Loeb, than if some other attorney is substituted

---

withdraw from the conduct of the trial and his firm may continue the representation and he or a lawyer in his firm may testify in the . . . [same four] circumstances . . . [as were enumerated in DR 5-101(B)(1) through (4)]' "

The court in *Guerrero, supra,* concludes: " 'The Code of Professional Responsibility takes a firm position that a lawyer should avoid testifying in court when he is the advocate. ABA Code DR 5-102. "Although his zeal as a lawyer might not influence his testimony as a witness, an ever critical public is only too apt to place such a construction upon it. A lawyer should avoid not only all improper relationships but should likewise, in order to maintain the profession in public confidence and esteem, avoid all relationships which may appear to be improper." ABA Comm. on Professional Ethics, Opinions, No. 50 (1931) (hereinafter cited ABA Opinions). See also Jackson v. United States, 297 F.2d 195, 196 (D.C.Cir. 1961).' "

in. Whatever hesitancy their counsel may have in the cross-examination of a professional colleague will be present in equal force no matter who represents the plaintiff Comdens.

Thirdly, we are dealing here with an action that is substantially equitable in nature.[2] It would seem that the equitable issues will be heard by a trial judge, presumably competent, sitting without a jury, to filter out and put in true perspective whatever impropriety, real or imagined, might otherwise exist.

Finally, I would mention that we are concerned here with the rules promulgated by the State Bar with the approval of this court which are to govern the conduct of attorneys and provide a basis for disciplinary action. These guidelines are not rules of practice promulgated by the Judicial Council to insure the integrity and efficiency of judicial process. Yet, the trial court has relied upon these Rules of Professional Conduct to impose what amounts to a pro tanto suspension of Loeb and Loeb's right to practice law. Moreover, the disqualification upheld herein does not preserve the integrity of the attorney-client relationship, (see e.g., *Big Bear Mun. Water Dist.* v. *Superior Court* (1969) 269 Cal.App.2d 919 [75 Cal.Rptr. 580]), but destroys this relationship and deprives petitioners of representation of their own choosing. It is questionable whether the trial court has such authority where, as here, there has been no showing of a threat to the orderly proceeding of the court or to the judicial system. The trial court should not therefore involve itself in a matter better left to the State Bar to decide. (*Jacobs* v. *State Bar* (1977) 20 Cal.3d 191 [141 Cal.Rptr. 812, 570 P.2d 1230].)[3] I do not accord to this rule such exclusivity that it may be enforced only by the State Bar, but I submit that it can only be applied by a trial court to disqualify counsel where the trial court has manifest and palpable interests to protect. (See *People* v. *Superior Court (Greer)* (1977), 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164]; *People* v. *Guerrero, supra,* 47 Cal.App.3d 444; cf. *Gee* v. *California State Personnel Bd.* (1970) 5 Cal.App.3d 713 [85 Cal.Rptr. 762].)

So important is the relation of attorney-client that the court should tread lightly in this area; and indeed, the burden should be on he who

---

[2]Petitioners sue for declaratory relief, injunctive relief and damages. Should defendants find that even on the legal issues, they will be prejudiced by a jury's discovering the relationship of Mr. Greene to Loeb and Loeb, perhaps they may make an appropriate motion or objection to prevent this disclosure. (Evid. Code, § 352.)

[3]". . . the interests of justice in this case involve not only the ethics of the lawyer but also the rights of his client. . . ." (*J. P. Foley & Co., Inc.* v. *Vanderbilt* (2d Cir. 1975) 523 F.2d 1357, 1360, Gurfein, J., conc.)

would disrupt that relation to provide the need to do so and to point out the precise grounds on which the court may exercise its discretion, if any, in severing the relationship.[4] Such a severance, therefore should only be imposed if to rule otherwise would be unfair to the opposing party or would directly threaten the integrity of the court.

Such considerations being absent from the instant case, I would issue a peremptory writ of mandate requiring respondent court to vacate its order of 10 February 1977 and enter a new and different order denying the motion of the real parties to disqualify the Comdens' counsel from participation in the case.

Bird, C. J., and Tobriner, J., concurred.

Petitioners' application for a rehearing was denied May 25, 1978. Bird, C. J., and Manuel, J., were of the opinion that the application should be granted.

---

[1]Justice Gurfein in his concurring opinion in *J. P. Foley & Co., Inc.* v. *Vanderbilt, supra,* 523 F.2d 1357, 1360.) "After all, in cases that do not involve past representation, the attempt by an opposing party to disqualify the other side's lawyer must be viewed as a part of the tactics of an adversary proceeding. As such it demands judicial scrutiny to prevent literalism from possibly overcoming substantial justice to the parties. . . ."