94 Cal.App.3d 347 (1979)
156 Cal. Rptr. 326
GIBSON, DUNN & CRUTCHER et al., Petitioners,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; UNION BANK et al., Real Parties in Interest.
Docket No. 54792.
Court of Appeals of California, Second District, Division Four.
June 21, 1979.
*349 COUNSEL
Gibson, Dunn & Crutcher, Samuel O. Pruitt, Jr., Theodore B. Olson, Fred F. Gregory, Rex S. Heinke, Overton, Lyman & Prince, Lewis, D'Amato, Brisbois & Bisgaard, Robert F. Lewis and David B. Parker for Petitioners.
No appearance for Respondent.
Loeb & Loeb, Jerome L. Goldberg, Robin Meadow and Lesley A. Andrus; Beardsley, Hufstedler & Kemble, Seth M. Hufstedler, Dennis M. Perluss and Evelyn Balderman for Real Parties in Interest.
OPINION
FILES, P.J.
(1) The issue presented is whether lawyer I who is sued by a former client for professional negligence may cross-complain for equitable indemnity against lawyer II who was retained to extricate the client from the situation created by the alleged negligence of lawyer I. We have concluded that under the circumstances presented here the answer is negative.
This is an original proceeding for a writ of mandate or prohibition to compel the superior court to dismiss a cross-complaint. The decision here must be based upon the allegations of the pleadings, and for the purpose of discussion we must assume the truth of all of those allegations, which, of course, have not been and may never be proven.
In December 1972 Schlumberger Limited entered into a transaction with Union Bank (hereinafter Bank) whereby Schlumberger guaranteed repayment of Bank's loan to Virtue Bros. Mfg. Co., Ltd., (VBM) which was then a wholly owned subsidiary of Schlumberger. VBM purportedly conveyed to Bank security interests in personal property. VBM subsequently defaulted and in 1975 Schlumberger paid off Bank pursuant to the guaranty and Bank assigned to Schlumberger the security interests which it had received from VBM.
When Schlumberger attempted to enforce the security interests, VBM filed a petition for reorganization under chapter XI of the Bankruptcy Act. In the bankruptcy proceedings other creditors of VBM challenged the validity of these security interests. Schlumberger retained the law *350 firms of Gibson, Dunn & Crutcher and Shutan & Trost (hereinafter collectively as Gibson) to assist it in enforcing its rights, and with the assistance of these lawyers Schlumberger settled its differences with the other creditors. This settlement, Schlumberger now alleges, netted about $1 million less than Schlumberger would have been entitled to receive if its security interests had been valid and enforced.
Schlumberger, through its attorneys Gibson, Dunn & Crutcher filed an action for damages against Union Bank and the law firm of Kindel & Anderson (Kindel), who had acted as legal counsel for Schlumberger in the 1972 loan transaction. The complaint alleges that Bank and Kindel, acting on behalf of Schlumberger in the loan transaction, were negligent in failing to provide complete, valid, perfected and enforceable security interests and failing to advise Schlumberger of the risk that the security interests would not be enforceable.
Bank's answer to the complaint alleges as an affirmative defense that Schlumberger was contributively negligent in settling with the other creditors of VBM.
Bank and Kindel separately filed cross-complaints against Gibson, alleging that those law firms were negligent in their representation of Schlumberger in the bankruptcy proceedings, and that this negligence contributed to the loss which Schlumberger seeks to recover from the cross-complainants. Bank's cross-complaint alleges that the terms of the settlement "were unreasonable and disproportionate to the risk involved," and that the cross-defendants "were further negligent in failing to promptly petition the Bankruptcy Court to lift its stay on the foreclosure proceeding and to seek reformation of the trust deed, to which reformation Schlumberger was entitled...."
Gibson demurred to Bank's cross-complaint upon the ground that it failed to state a cause of action against them. The superior court's order overruling that demurrer is the subject of the petition here.
Pursuant to an agreement among the parties Gibson has not yet responded to the cross-complaint of Kindel. Nevertheless, since that cross-complaint raises legal issues identical with those raised by the Bank, Kindel has been recognized as an additional real party in interest in this mandate proceeding.
*351 The theory of the cross-complaint is based upon principles of comparative negligence as applied to joint tortfeasors in American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578 [146 Cal. Rptr. 182, 578 P.2d 899].[1] That case arose out of the bodily injury sustained by a minor boy while participating in a motorcycle race. The minor sued the organizations who sponsored the race, charging that they had negligently designed and managed the race. One of the defendants sought leave of court to file a cross-complaint against the minor's parents seeking indemnification upon the ground that the parents had negligently failed to supervise their son, but the trial court denied leave to file it. The Supreme Court disagreed, stating that the principle of comparative negligence which had been established in Li v. Yellow Cab Co. (1975) 13 Cal.3d 804 [119 Cal. Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] "applies equally to the allocation of responsibility between two or more negligent defendants"; and the court therefore held "that under the common law equitable indemnity doctrine a concurrent tortfeasor may obtain partial indemnity from co-tortfeasors on a comparative fault basis." (20 Cal.3d at pp. 607, 608.)
As Bank and Kindel point out, their cross-complaints fit neatly into the rationale of American Motorcycle. They allege the negligence of Gibson was a cause of the loss which Schlumberger complains of in its action against Bank and Kindel; hence the latter, if legally responsible to Schlumberger for that loss, are entitled to at least partial indemnity from Gibson on a comparative fault basis.
We observe, however, that American Motorcycle differs factually from the present case in two respects, one of which appears to be material.
One difference is that American Motorcycle dealt with liability for a single indivisible injury  that is the bodily harm sustained by the minor plaintiff in a single occurrence. The present case involves successive acts, each of which had a discernible effect contributing to the ultimate loss. It is conceivable that in this situation the evidence might show that the *352 harm resulting from the acts of one party could be identified and measured apart from the harm caused by other parties. We do not think this factual difference should militate against comparative indemnification. In medical malpractice cases, prior to American Motorcycle, partial indemnification has been awarded in favor of the party who caused the first injury and against the physician whose subsequent negligence aggravated it. (Herrero v. Atkinson (1964) 227 Cal. App.2d 69 [38 Cal. Rptr. 490, 8 A.L.R.3d 629]; Niles v. City of San Rafael (1974) 42 Cal. App.3d 230 [116 Cal. Rptr. 733].) These cases support the availability of equitable indemnification, comparative or otherwise, as between parties who made separate contributions to the loss.
The other distinction, which we think important, is the effect the cross-complaint for indemnification may have upon the relationship between the injured party and the law firm (lawyer II) chosen by that party to extricate him from the condition created by the cross-complainant (who need not have been a lawyer, but who, for convenience, we call lawyer I).
The most conspicuous consequence of a cross-complaint against the plaintiff's lawyer is to preclude that lawyer from trying the case on behalf of the plaintiff. Depriving a party of the lawyer of his choice, who is also the lawyer most familiar with the background of the case, is a serious matter, but we do not view it as controlling here. In Comden v. Superior Court (1978) 20 Cal.3d 906 [145 Cal. Rptr. 9, 576 P.2d 971], the Supreme Court imposed a standard which severely impairs the availability of attorneys to litigate cases arising out of business matters in which they or their firms participated. The impact of Comden is to give secondary importance to the need of a party to be represented by the law firm he deems best qualified for that task.
The critical element is the effect upon the relationship between the injured party and lawyer II while they are trying to resolve the situation created by lawyer I.
One relevant statement of the problem appears in Goodman v. Kennedy (1976) 18 Cal.3d 335 [134 Cal. Rptr. 375, 556 P.2d 737].
That action arose out of the purchase of shares of stock. The purchasers sued the seller's attorney, alleging that he had negligently advised his clients that, under Securities Exchange Commission regulations, this stock could be sold by them without adverse consequence to the holders. *353 The Supreme Court upheld a dismissal of the action upon the ground that the complaint failed to show that the defendant lawyer owed any duty to the plaintiffs, in that the advice given was not intended to be communicated to them, nor was it intended to benefit them. Of interest here is this language: "To make an attorney liable for negligent confidential advise not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal `would prevent him from devoting his entire energies to his client's interests' [citation]. The result would be both `an undue burden on the profession' [citation] and a diminution in the quality of the legal services received by the client." (Goodman v. Kennedy, supra, at p. 344.)
Bank and Kindel correctly point out that the present case is factually distinguishable from Goodman v. Kennedy. Goodman's action was based upon an alleged duty of an attorney to a person not his client. The cross-complaints of Bank and Kindel are based upon the duty of Gibson to its own client, Schlumberger. Bank and Kindel concede that Gibson owed no duty to them. They ask only that Gibson contribute to any damages awarded to their client Schlumberger to the extent that it  Gibson  negligently harmed Schlumberger.
However, the reasoning of Goodman is not based entirely upon the absence of any duty owed by the attorney to the plaintiff. The language quoted above points out an important policy consideration. That is, to expose the attorney to actions for negligence brought by parties other than the client, "would inject undesirable self-protective reservations into the attorney's counselling role" and tend to divert the attorney from single-minded devotion to his client's interests.
The case factually analogous to ours is Held v. Arant (1977) 67 Cal. App.3d 748 [134 Cal. Rptr. 422]. In that case Held had employed Arant (lawyer I) to draft an agreement with NovaTech, Inc. When litigation arose between the parties to the agreement, Held retained another law firm (lawyer II) to represent him; and under the guidance of lawyer II, Held paid Nova-Tech a substantial amount in settlement. Held sued lawyer I for negligence. Lawyer I filed a cross-complaint against lawyer II alleging that, by reason of the negligence of lawyer II, legally *354 defensible claims had been settled, and asking indemnification if lawyer I should be found liable to the plaintiff. The trial court dismissed the cross-complaint and the Court of Appeal affirmed.
The appellate court decision in Held was subsequent to the Court of Appeal decision in American Motorcycle and prior to the Supreme Court decision. The Held court avoided any possible conflict with whatever might be decided in American Motorcycle by stating in a footnote: "Arant raises no issue of the effect of the doctrine of comparative negligence upon the case at bench. We treat that issue as waived." (67 Cal. App.3d at 751, fn. 2.)
In ruling against the cross-complainant the Held court considered two possible theories of liability. The first was the contention of the cross-complainant, lawyer I, that a lawyer is liable for his negligence to anyone who is foreseeably damaged by it. The court disposed of this by citing the cases holding that the lawyer's duty of care extends only to the intended beneficiaries of his action.
The second theory considered by the Held court was a suggested analogy with the cases holding that a party defendant who was liable for personal injuries sustained by the plaintiff was entitled to indemnification from the physician whose negligence had aggravated the injury. Those cases rested on the theory that the tortious act of the original wrongdoer was a proximate cause of all of the ensuing damage, including the subsequent negligent medical treatment; but that, with respect to the aggravation caused by the medical treatment, the physician was the active tortfeasor and the original tortfeasor's negligence was passive or secondary. Because the original tortfeasor was only secondarily negligent, he was entitled to be indemnified by the physician for the identifiable damages which the latter inflicted. (See Niles v. City of San Rafael, supra, 42 Cal. App.3d 230, 238-239; Herrero v. Atkinson, supra, 227 Cal. App.2d 69, 75.)
That principle of indemnification among tortfeasors had existed long before comparative negligence had become the law of California.
The Held court summarized its holding thus: "... Because reasons of policy peculiar to the tripartite relationship of attorney-client-adversary override the principle of equitable indemnity enunciated in cases such as Herrero ... and Niles... we conclude that the first lawyer has no right of indemnity from the second." (67 Cal. App.3d at p. 750.)
*355 Explaining the inapplicability of the medical malpractice cases the court said: "In the situation of successive acts of negligence by a tortfeasor and treating physician, the possibility that he may be sued by the original tortfeasor for indemnity in no way inhibits the performance of the professional duty by the physician. Whatever may be the effect of exposure to malpractice suits upon the performance of good medicine, it exists irrespective of the indemnity potential. Where, however, an attorney is retained to represent the interests of his client against persons who are actual or potential adversaries, the possibility that one of those adversaries may seek indemnity from the attorney if he is held liable to the client can impinge upon the undivided loyalty owed by counsel." (67 Cal. App.3d at p. 752.)
Even though Held v. Arant did not raise comparative negligence issues, it did squarely decide that the preservation of the attorney-client privilege precluded a cross-action by lawyer I against lawyer II for equitable indemnification.
What was said in Held v. Arant is quite as applicable to indemnification under the comparative negligence standards. Since American Motorcycle has greatly expanded the opportunities for defendants in negligence cases to seek indemnification from parties whom the plaintiff did not choose to sue, the hazard to the attorney-client relationship could now be vastly greater than it was under the substantive law previously in effect.
Bank and Kindel argue that permitting their cross-complaint will not impinge upon a lawyer's duty to his client because the cross-complaints do not involve any expansion of the lawyer's duty. They argue that they are doing nothing more than seeking to protect and enforce the lawyer's duty to his client. In short, if lawyer II fully performs his duty to his client, he need fear no cross-complaint for comparative indemnification.
This argument misses the vice of the lawyer I versus lawyer II cross-complaint. The problem is not that lawyer II may be found liable to his client for malpractice. It is that in satisfying the needs and desires of his client, lawyer II may be exposing himself to the not insubstantial cost of defending an action by his client's opponent.
The parties have mooted the question whether in a factual setting of the kind presented here lawyer II would or would not be motivated to litigate rather than settle his client's claim in order to minimize his *356 exposure to a cross-complaint. We think the problem is more complex than that.
A client seeking to extricate himself from a situation caused by the negligence of lawyer I may find his options limited both by legal constraints and practical considerations. The client's perception of his own best interests, after obtaining sound legal advice, may dictate a course which lawyer I may fairly characterize as "unreasonable and disproportionate to the risk involved." What effect a settlement so motivated would have on the client's claim against lawyer I is not before us. What is pertinent here is the effect upon the relationship between lawyer II and the client when the client's alternatives are under consideration. Lawyer II should not be required to face a potential conflict between the course which is in his client's best interest and the course which would minimize his exposure to the cross-complaint of lawyer I.
In the language of the Held court, "the possibility that one of those adversaries may seek indemnity from the attorney if he is held liable to the client can impinge upon the undivided loyalty owed by counsel." (67 Cal. App.3d at p. 752.)
Counsel for Kindel have argued that a suit for malpractice is one of the risks of professional life and should not be regarded as a serious inhibition upon professional loyalty and objectivity. With respect to malpractice claims of dissatisfied clients, that philosophy may be appropriate. But the effect is different if the attorney is exposed to negligence claims by parties who are his client's adversaries. The teaching of such cases as Goodman v. Kennedy, supra, 18 Cal.3d 335 and Held v. Arant, supra, 67 Cal. App.3d 748, is that exposure to the client's potential adversaries "`would prevent him from devoting his entire energies to his client's interests.'" (18 Cal.3d at p. 344.)
Let a writ of mandate issue requiring the respondent court to vacate its order overruling the demurrers of Gibson, Dunn & Crutcher and Shutan & Trost to the cross-complaint of the Union Bank and make a new order sustaining those demurrers without leave to amend.
Kingsley, J., concurred.
*357 JEFFERSON (Bernard), J.
I dissent.
I disagree with the majority's position that the cross-complaints of the bank and Kindel and Anderson (hereinafter collectively as Kindel) against Gibson, Dunn and Crutcher and Shutan and Trost (hereinafter collectively as Gibson) do not state a viable cause of action for damages for negligence by an attorney.
I shall discuss and designate the parties in this matter in the same way as they are discussed and designated by the majority opinion. Kindel is designated herein as lawyer I and Gibson is designated as lawyer II. There is only one client in this case  Schlumberger  who was represented first by lawyer I, against whom he filed a malpractice action. Subsequently, Schlumberger hired lawyer II for the purpose of becoming extricated from the financial consequences resulting from his claimed malpractice by lawyer I.
The basic holding of the majority, with which I disagree, is that in the malpractice action against lawyer I by Schlumberger, the mutual client of both lawyer I and lawyer II, lawyer I may not cross-complain for partial indemnity against lawyer II, even though the mutual client's claim for malpractice damages against lawyer I has been enhanced as a result of the malpractice committed by lawyer II. The majority holds that it is bound by the law enunciated in Goodman v. Kennedy (1976) 18 Cal.3d 335 [134 Cal. Rptr. 375, 556 P.2d 737] and Held v. Arant (1977) 67 Cal. App.3d 748 [134 Cal. Rptr. 422].[1] However, I do not consider these cases as being either dispositive or persuasive with respect to the issue presented.
The Supreme Court case of Goodman is clearly distinguishable from the case at bench  both in its facts and its reasoning. In Goodman, we have a nonlawyer who had dealt with an attorney's client at arm's length and who sought to hold the attorney liable for malpractice because of his advice to the client. But, in the case at bench, the person who is seeking to hold an attorney liable in malpractice for his advice to his client is also an attorney who is being sued for malpractice by the mutual client of both attorneys. In the case before us, lawyer I dealt with lawyer II's client, Schlumberger, not at arm's length but in a fiduciary relationship just as lawyer II dealt with this same client in a fiduciary relationship.
*358 The case at bench, therefore, is clearly distinguishable from the Goodman case. As a consequence, the rationale of Goodman has no application to the case at bench, since Goodman makes clear that the rule of law it enunciates seeks to preclude liability of an attorney to a third party who engages in a transaction with the attorney's client and "with whom the client deals at arm's length" in such transaction. (Goodman, supra, 18 Cal.3d 335, 344.) (Italics added.)
It is the arm's-length transaction between client and a third party that causes Goodman to conclude that to permit such a third party to hold the attorney liable for the latter's negligence to his client "would inject undesirable self-protective reservations into the attorney's counselling role." (Ibid.) In such a situation "[t]he attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal `would prevent him from devoting his entire energies to his client's interests' [citation]. The result would be both `an undue burden on the profession' [citation] and a diminution in the quality of the legal services received by the client." (Ibid.)[2]
Since Goodman is obviously distinguishable from the case at bench, it is not binding authority for this court in the case at bench. Further, it is to be noted that the Goodman rationale, which sets forth that no duty is owed from an attorney to a third party who deals at arm's length with the attorney's client, was decided by a divided court. Thus, a dissenting opinion made this observation: "I conclude that defendant should be held to owe a duty to plaintiffs. I disagree with the majority's conclusion that the imposition of liability in this case will result in an undue burden upon the legal profession. The contention is not persuasive that the right to recover for malpractice must be limited to the client on a theory that `if we go one step beyond that, there is no reason why we should not go fifty.' [Citation.] Attorneys are not provided the insulation of mere agents. As the Supreme Court has said many times, they `are officers of the law, as well as the agents by whom they are employed.' [Citation.]" (Goodman, *359 supra, 18 Cal.3d 335, 353; Justice Mosk dis., with Justice Tobriner concurring in the dis. opn.)
The majority opinion relies upon the Held case as being factually similar to the case at bench and, hence, dispositive in favor of the position taken by lawyer II. I disagree with the majority's conclusion that Held is dispositive of the case before us. In the first place, Held does not deal with the issue of whether lawyer I should have a claim for partial indemnity against lawyer II based upon the comparative fault principles set forth in American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578 [146 Cal. Rptr. 182, 578 P.2d 899].
In addition, I disagree with the majority in believing that the teaching of cases such as Goodman and Held is to the effect that exposure to the client's potential adversaries would prevent a lawyer from devoting his entire energies to his client's interests. If this is the teaching of Goodman and Held, I would describe it as dicta and "unsound teaching" which ought not to be followed by this court. I agree with the views of the dissent in the Goodman case that this theory that an attorney will not devote his entire energies to his client's interests because of some fear of exposure of liability to the third party dealing with the client is simply not persuasive reasoning. Since Held was not decided by the California Supreme Court, this court is certainly not bound to follow the decision. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450 [20 Cal. Rptr. 321, 369 P.2d 937].)
It is my view that Goodman, Held and Norton should not be considered persuasive to any degree since these three cases were decided prior to the Supreme Court's decision of American Motorcycle. I see the issue raised by lawyer II's demurrer to lawyer I's cross-complaint and by lawyer II's petition before us as presenting the question of whether the general rules of partial indemnity, based on comparative-fault principles enunciated in American Motorcycle, are to be made applicable when the alleged joint tortfeasor is an attorney (lawyer II) who represents the victim (client) of another attorney's malpractice (lawyer I) and is now accused by the first attorney of negligently mishandling the client's interests following the first act of malpractice and thereby enhancing the client's damages.
It is my view that there is no rational basis for not applying the principles of American Motorcycle to the case at bench. When lawyer II made the decision to represent the client, Schlumberger, in connection with the problems created by lawyer I's prior representation of Schlumberger, *360 lawyer II certainly had every reason to believe that lawyer I would seek to hold him liable for any malpractice on his part which might increase the amount of damages which Schlumberger would undoubtedly seek to recover from lawyer I.
I consider the principle sound that, since privity with a negligent attorney is no longer a prerequisite to an action for legal malpractice (see Lucas v. Hamm (1961) 56 Cal.2d 583 [15 Cal. Rptr. 821, 364 P.2d 685] and Heyer v. Flaig (1969) 70 Cal.2d 223 [74 Cal. Rptr. 225, 449 P.2d 161]), an attorney ought to be held liable for his negligence to anyone who foreseeably may be damaged by such negligence. This is the view enunciated by American Motorcycle, and I see no sound public policy reasons for carving out an exception to the principles of American Motorcycle in order to protect a negligent lawyer. In the case before us, no reasonable justification is advanced to protect an attorney from being sued for malpractice by an attorney as a third party who had a prior relationship with the same client.
The alleged public policy of insuring that an attorney will devote his full energies to his client's interests, set forth in Goodman, Held and Norton, simply evaporates under the circumstances of the instant case. The rule of law of comparative-fault principles, set forth in American Motorcycle, is supported by a much stronger public policy than a rule of law which protects a lawyer from liability for negligence to a person who deals with the lawyer's client.
Under the facts presented by the instant case, it is tenuous and speculative at best to conclude that permitting cross-complaints by lawyer I against lawyer II in a malpractice action against lawyer I will distort and adversely affect lawyer II's ability to devote his best efforts to serving his client. The Goodman, Held and Norton rationale rests on an unexamined and unpersuasive hypothesis, namely, the belief that the possibility of an attorney's liability to third parties for negligence in advising a client will inhibit an attorney's best representation of his client even in a situation where there is no conflict between the interest of the client and the third party.
To impose a duty of due care on lawyer II in favor of lawyer I in the case at bench represents no addition or conflict in the duties imposed upon lawyer II, since the duty imposed is already the very same duty owed by lawyer II to his client to exercise due care. If lawyer II does not exercise due care with respect to his client who is also a former client of *361 lawyer I and, as a result, increases the damages suffered by the client from lawyer I's negligence, why shouldn't lawyer II be liable for the increased damages resulting from his negligence? My answer to this question is simple. He should be liable. Hence, I would discharge the alternative writ and dismiss Gibson's petition.
The petition of the real parties in interest for a hearing by the Supreme Court was denied August 22, 1979.
NOTES
[1] In Commercial Standard Title Co., Inc. v. Superior Court, 92 Cal. App.3d 934 [155 Cal. Rptr. 393] (decided May 11, 1979, Fourth Dist., Div. One) a customer of two title insurance companies sued the companies for negligently preparing a report. The title companies sought to cross-complain against its customer's attorney for indemnification, charging the latter with negligence in advising his client to rely upon the report. A majority of the court held that the American Motorcycle rationale did not apply, and upheld an order sustaining a demurrer to the cross-complaint.

Since that decision is not yet final, we do not rely upon it. (See rules 24(a), 28(a), Cal. Rules of Court.)
[1] I recognize that this court, after having denied lawyer II's petition, was ordered by the California Supreme Court to issue an alternative writ of mandamus and/or prohibition, and to reconsider the issues presented in light of Goodman and Held and also in light of Norton v. Hines (1975) 49 Cal. App.3d 917 [123 Cal. Rptr. 237].
[2] In a footnote, the Supreme Court cites Norton v. Hines (1975) 49 Cal. App.3d 917 [123 Cal. Rptr. 237], and explained Norton by stating: "[A] party who had successfully defended a civil suit filed a complaint against his opponent's attorney claiming damages for the attorney's negligence in advising prosecution of the suit but failing to allege the elements of an action for malicious prosecution. In holding that no cause of action was stated the court properly expressed concern that if an attorney is made liable to his client's adversary for mere negligence in advising commencement of a suit, `lawsuits now justifiably commenced will be refused by attorneys, and the client, in most cases, will be denied his day in court.' (49 Cal. App.3d at p. 923.)" (Goodman, supra, 18 Cal.3d 335, 344-345.)